# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:21-cv-00330-MR-WCM

| | |
|---|---|
| HOLLIE JUSTICE, ) | |
| ) | |
| Plaintiff, ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| vs. ) | |
| ) | |
| M.N.S. & ASSOCIATES, LLC ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Default

Judgment [Doc. 12] and Motion for Costs of the Action and Attorney's Fees

[Doc. 12-1].

## I.    PROCEDURAL BACKGROUND

On November 2, 2021, the Plaintiff, Hollie Justice ("Plaintiff"), initiated

this action against Defendant M.N.S. & Associates, LLC.  [Doc. 1].   The

Plaintiff's Complaint asserts claims against the Defendant for violations of

the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*,

and the North Carolina Collection Agency Act, N.C. Gen. Stat. § 58-70, *et*

*seq.* ("NCCAA").  [Id. at ¶¶ 1-2].  The Plaintiff seeks statutory damages of

$1,000 under the FDCPA, statutory damages of up to $4,000 under the NCCAA, and reasonable attorney's fees and costs.[1]  [Id. at ¶¶ 37-38, 43-45].

On December 13, 2021, the Plaintiff filed a proof of service indicating that the Defendant was served on December 8, 2021.  [Doc. 5].  The Defendant did not make an appearance or otherwise defend the action.  On December 30, 2021, the Plaintiff filed a Motion for Entry of Default against the Defendant.  [Doc. 6].  On February 1, 2022, the Clerk entered a default against the Defendant.  [Doc. 9].

On April 21, 2022, this Court entered an Order directing the Plaintiff to file an appropriate motion or otherwise take further action with respect to the Defendant.  [Doc. 10].  On May 25, 2022, the Plaintiff filed the present Motion for Default Judgment [Doc. 12] and Motion for Costs of the Action and Attorney's Fees [Doc. 12-1].

## II.  STANDARD OF REVIEW

"To obtain a default judgment, a party must first seek an entry of default under Federal Rule of Civil Procedure 55(a)."  Hayhurst v. Liberty Int'l Underwriters, No. 5:08-cv-5347, 2009 U.S. Dist. LEXIS 5347, at *2 (N.D.W.

---

[1] In Count II of the Complaint, the Plaintiff states that she is also seeking punitive damages under the NCCAA.  [Doc. 1 at ¶ 44].  However, in her Motion for Default Judgment, the Plaintiff states only that she seeks statutory damages under the FDCPA and the NCCAA. [Doc. 12 at 4].  Accordingly, the Court does not address the issue of punitive damages.

2

Va. Jan. 29, 2009); see Eagle Fire, Inc. v. Eagle Integrated Controls, Inc., No. 3:06-cv-00264, 2006 WL 1720681, at *5 (E.D. Va. June 20, 2006) ("The entry of default is a procedural prerequisite to the entry of a default judgment."). Rule 55(a) states that the clerk must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After the clerk enters default, the party may seek a default judgment under Rule 55(b)(1) or (2), depending on the nature of the relief sought. Rule 55(b) "authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). By such a default, a defendant admits the well-pleaded factual allegations in the plaintiff's complaint. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001).

## III.    FACTUAL BACKGROUND

The well-pleaded factual allegations of the Plaintiff's Complaint are deemed admitted by virtue of the Defendant's default. Id. The following is a summary of the relevant and admitted facts.

The Plaintiff is a resident of Marion, North Carolina. [Doc. 1 at ¶ 7]. The Defendant is a debt collection agency located in Buffalo, New York. [Id.

3

at ¶ 12]. The Defendant engaged in collection efforts in North Carolina. [Id. at ¶ 14].

The Plaintiff allegedly owes a debt arising from transactions for personal, family, and household purposes. [Id. at ¶ 21]. The Defendant is attempting to collect this alleged debt from the Plaintiff. [Id. at ¶ 20]. On or about July 2021, the Defendant began calling the Plaintiff's telephone in an attempt to collect the alleged debt. [Id. at ¶¶ 22-23]. On or about July 2021, a collector working for the Defendant left two voicemail messages on the Plaintiff's telephone. [Id. at ¶ 24]. In the first voicemail message, the Defendant's collector stated the following:

> Hello, this message is intended for Hollie Justice. I'm calling for asset verification and from address, place of employment. I was forwarded documentation does verify your name, social security number, in regards to this process for enforceable review. Please be advised we are requesting for you to sign and respond to our required demand notice. Before I go ahead and begin scheduling of the document, I wanted to inform you this process is being expedited and should commence within the next 24 to 48 hours. At this time, with any questions regarding this matter, you may contact an advisor at 877-630-6498. Reference your file number, 53871220. Otherwise, failure to contact then may result in further determinations being made, depending on the state/federal guidelines. You have now been officially notified.

[Id. at ¶ 24a].  In the second voicemail message, the Defendant's collector stated the following:

> Hello.  This message is intended for Hollie Justice. I'm calling again for asset verification, from address place of employment.  I still have a request for you to sign in, respond to a required demand notice per federal guideline.  And since I haven't heard differently, the issuing process may commence today.  You do still have the opportunity to contact an advisor with any questions.  This can be done by contacting him at 877-630-6498.  Reference your file number, 53871220.  Otherwise, failure to contact them may result in further determinations being made pursuant to all typical state federal guidelines. You have now been officially notified for the final time.

[Id. at ¶ 24b].

On or about July 12, 2021, the Defendant called and spoke with the Plaintiff's mother.  [Id. at ¶ 29].  During that conversation, a collector working for the Defendant requested that the Plaintiff's mother provide the Plaintiff's telephone number, and the Plaintiff's mother provided the Plaintiff's telephone number to the collector.  [Id. at ¶ 30a-b].  The collector also falsely represented that the collector had documents for the Plaintiff to sign.  [Id. at ¶ 30c].  Relying on the collector's representation, the Plaintiff's mother agreed to allow the collector to call back and leave a voicemail message with the collector's contact information.  [Id. at ¶ 30d].  On or about July 12, 2021,

a collector working for the Defendant left the following voicemail message on

the telephone belonging to the Plaintiff's mother:

> Hello, ma'am. This is Eileen with MNS and Associates. I just spoke to you in regards to Holl[ie] Justice. My number here is 877-630-6498. I also have a reference number for her, 538771220. I do have some documents I need to go over with Holl[ie] to make sure I have them correct. If you could ask her to please call me, I would appreciate it. Thank you, and have a good day.

[Id. at ¶ 31].

## IV.   DISCUSSION

### A.   Jurisdiction

The Plaintiff alleges violations of the FDCPA, which is a federal law.

[Id. at ¶¶ 35-36]. As such, the Court has federal question jurisdiction over

the Plaintiff's FDCPA claims. See 28 U.S.C. § 1331. The Court also has

"supplemental jurisdiction over all other claims that are so related to claims

in the action within such original jurisdiction that they form part of the same

case or controversy under Article III of the United States Constitution." 28

U.S.C. § 1367. Because the Plaintiff's NCCAA claims are related to the

FDCPA claims, the Court has supplemental jurisdiction over those claims.

Accordingly, the Court has subject-matter jurisdiction over this action.

The Court must also have personal jurisdiction over the Defendant to

render a valid default judgment. For the Court to have personal jurisdiction,

6

the Plaintiff must prove, by a preponderance of the evidence, that exercising jurisdiction will (1) comply with the forum state's long-arm statute and (2) comport with the due process requirements of the Fourteenth Amendment. See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted).  Because North Carolina's long-arm statute has been construed to extend as far as due process allows, Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001), this two-pronged test is collapsed into a single inquiry of whether the exercise of personal jurisdiction over the defendant comports with due process.  Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014).

The Plaintiff's Complaint contains jurisdictional facts sufficient to support the exercise of personal jurisdiction over the Defendant by stating that the Defendant engaged in debt collection efforts in North Carolina and directed phone calls to the Plaintiff.  [Doc. 1 at ¶¶ 14, 20-24].  Given those contacts with this forum, the Defendant should have reasonably anticipated being haled into this Court.

The Plaintiff has also complied with her obligations to effectuate service of process by serving the Defendant with a summons and a copy of the Complaint pursuant to Federal Rule of Civil Procedure 4.  [Doc. 5].

Finally, the venue is proper under 28 U.S.C. § 1391(b) and (c). Accordingly, this Court has jurisdiction over this matter and will proceed to address the merits of the Plaintiff's Motion for Default Judgment.

## B. FDCPA

In Count I of the Complaint, the Plaintiff asserts claims against the Defendant for violations of the FDCPA. [Doc. 1 at ¶¶ 35-36].

In general, the FDCPA regulates abusive and unfair debt collection practices, ensures consumer protection, encourages fair competition between debt collectors, and provides a remedy for consumers victimized by unscrupulous debt collection practices. See 15 U.S.C. § 1692 *et seq.* To establish a claim for a violation of the FDCPA, the Plaintiff must show that (1) she has been the object of collection activity arising from consumer debt; (2) the defendant qualifies as a debt collector under the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. See Dikun v. Streich, 369 F. Supp. 2d 781, 784-85 (E.D. Va. 2005). Although the FDCPA prohibits a number of debt collection procedures, "[t]he FDCPA is a strict liability statute and a consumer only has to prove one violation to trigger liability." Akalwadi v. Risk Mgt. Alts., Inc., 336 F. Supp. 2d 492, 500 (D. Md. 2004) (citing Spencer v. Henderson-Webb, Inc., 81 F. Supp. 2d 582, 590-91 (D. Md. 1999)).

8

The FDCPA provides that a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  A debt collector violates this provision where it:

> fail[s] to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and [it fails] to disclose in subsequent communications that the communication is from a debt collector[.]

Id. § 1692e(11).

A "communication" under the FDCPA is "the conveying of information regarding a debt directly or indirectly to any person through any medium." Id. § 1692a(2).  A majority of courts that have considered whether voicemail messages are "communication[s]" have "construe[d] the FDCPA's definition of 'communication' to encompass voicemail messages left for the consumer debtor, even if nothing in those messages refers to a debt." Chatman v. GC Servs. LP, 57 F. Supp. 3d 560, 568 (D.S.C. Nov. 6, 2014) (collecting cases); see also Deal v. Trinity Hope Assocs., LLC, No. 5:16-cv-00140-RLV-DSC, 2017 WL 3026401, at *5 (W.D.N.C. July 17, 2017) (holding that a voicemail message providing contact information and stating "[i]t is important that my call is returned" constitutes a "communication" under the FDCPA); Edwards

9

v. Niagara Credit Sols., 586 F. Supp. 2d 1346, 1359 (N.D. Ga. Nov. 13, 2008) (holding that a voicemail message referencing an "important matter," a file number, and contact information constituted a "communication" under the FDCPA), *aff'd* 584 F.3d 1350 (11th Cir. 2009); Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643, 657 (S.D.N.Y. Mar. 25, 2006) ("[G]iven the choice of language by Congress, the FDCPA should be interpreted to cover communications that convey, directly or indirectly, any information relating to a debt, and not just when the debt collector discloses specific information about the particular debt being collected . . . [A] narrow reading of the term 'communication' to exclude instances such as the present case where no specific information about a debt is explicitly conveyed could create a significant loophole in the FDCPA[.]").

Further, a debt collector also violates the FDCPA when it places "telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6). The Fourth Circuit has not addressed what constitutes "meaningful disclosure" under the FDCPA. However, the Eleventh Circuit has instructed that "meaningful disclosure" requires that "the caller reveals the nature of the debt collection company's business, which can be satisfied by disclosing that the call is on behalf of a debt collection company, and the name of the debt collection company." Bryan v. Allied Interstate, LLC, 513

F. Supp. 3d 686, 690 (W.D.N.C. Jan. 14, 2021) (quoting Hart v. Credit Control, LLC, 871 F.3d 1255, 1260 (11th Cir. 2017)); see also Deal, 2017 WL 3026401, at *4 ("Meaningful disclosure requires that the debt collector state his or her name, capacity, and provide enough information to the consumer as to the purpose of the call.").

Taking the Plaintiff's allegations as true by virtue of the Defendant's default, the Plaintiff has been the object of collection activity arising from consumer debt, and the Defendant qualifies as a debt collector. The Plaintiff does not specifically allege that the first voicemail message left on her telephone by the Defendant's collector in July 2021 was the *initial* communication from the Defendant. However, taking the Plaintiff's allegations as true, even if the first voicemail message was not the *initial* communication from the Defendant, the Defendant still violated both §§ 1692e(11) and 1692d(6) of the FDCPA by failing to disclose in the first and second voicemail messages that those communications were from a debt collector.[2] [Doc. 1 ¶¶ 22-25].

_____

[2] The FDCPA provides one exception to 15 U.S.C. § 1692d(6) when a telephone call is placed to "any person other than the consumer for the purpose of acquiring location information about the consumer." 15 U.S.C. §§ 1692d(6), 1692b. Here, the Plaintiff is the consumer, and the Defendant left two voicemail messages on her telephone. Therefore, the exception to 15 U.S.C. § 1692d(6) does not apply to those two voicemail messages.

11

Under the FDCPA, the Court can award statutory damages of up to $1,000 based on the "frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional[.]"  15 U.S.C. § 1692k.  Considering the number of FDCPA violations committed by the Defendant,[3]  the Court will award statutory damages under the FDCPA.  Because the FDCPA only provides for a maximum award of $1,000 in statutory damages per lawsuit, the Court will award the Plaintiff the maximum of $1,000 in statutory damages.  15 U.S.C. § 1692k(b)(1); Wright v. Fin. Serv. of Norwalk, Inc., 22 F.3d 647, 651 (6th Cir. 1994); Richardson v. William Sneider and Assocs., LLC, No. 4:12-cv-00025, 2012 WL 3525625, at *10 (E.D. Va. July 24, 2012).

### C.    NCCAA[4]

In Count II of the Complaint, the Plaintiff asserts claims against the Defendant for violations of the NCCAA.  [Doc. 1 at ¶¶ 40-42].

Similar to the FDCPA, the NCCAA regulates "collection agencies," defined as persons "directly or indirectly engaged in soliciting, from more

---

[3] The Court finds that the Defendant's conduct at least violated 15 U.S.C. §§ 1692e(11) and 1692d(6).

[4] "While a party may typically recover only once for his injuries, '[d]amages under the FDCPA do not preclude damages under relevant state law,' here the NCCAA."  Leto v. World Recovery Serv., LLC, No. 3:14-cv-00489-FDW, 2015 WL 1897060, at *3 (W.D.N.C. Apr. 27, 2015) (Cogburn, J.) (citing Baie v. Prime West Mgmt. Recovery, LLC, 08-06795-8-SWH, 2011 WL 1257148, at *9 (E.D.N.C. Mar. 30, 2011)).

than one person[,] delinquent claims of any kind owed or due or asserted to be owed or due the solicited person and all persons directly or indirectly engaged in the asserting, enforcing or prosecuting of those claims," N.C. Gen. Stat. § 58-70-15(a) (internal quotation marks omitted). The NCCAA prohibits collection agencies from engaging in harassing or oppressive conduct and collecting or attempting to collect a debt by using coercion or fraudulent, deceptive, or misleading representations. Id. §§ 58-70-95, 58-70-100, 58-70-110. The NCCAA also specifically provides that the following actions constitute fraudulent, deceptive, or misleading representations:

> (1)    Communicating with the consumer other than in the name of the person making the communication, the collection agency and the person or business on whose behalf the collection agency is acting or to whom the debt is owed;

> (2)    Failing to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector[.]

Id. §§ 58-70-110(1)-(2).

Taking the Plaintiff's allegations as true by virtue of the Defendant's default, the Plaintiff has been the object of collection activity arising from

consumer debt, and the Defendant qualifies as a collection agency under the NCCAA.  Further, like the Defendant's violations of the FDCPA, the Defendant violated the NCCAA when attempting to collect the alleged debt from the Plaintiff by failing to disclose in the two voicemail messages left on the Plaintiff's telephone that those communications were from a debt collector.  [Doc. 1 ¶¶ 22-25].

The NCCAA provides for statutory damages of between $500 and $4,000 per violation.  N.C. Gen. Stat. § 58-70-130(b).  A "[v]iolation" does not correlate to the number of counts alleged, but to each separate instance where the defendant violated the statute.  See Baie, 2011 WL 1257148, at *4 (awarding $2,000 for each of the five occasions where the defendant contacted the plaintiff); In re Kirkbride, No. 08-00120-8-JRL, 2010 WL 4809334, at *5 (E.D.N.C. Nov. 19, 2010) (awarding monetary damages per call, not per count of the NCCAA violated).  The Plaintiff does not, however, specifically allege the number of instances that the Defendant violated the NCCAA.  For example, the Plaintiff alleges that "[i]n or around July 2021, Defendant began placing *calls* to Plaintiff" and specifically alleges that the Defendant left two voicemail messages on the Plaintiff's telephone.  [Doc. 1 ¶¶ 22-25].  The Court finds that the Plaintiff has alleged at least two violations of the NCCAA by describing the content of the two voicemail messages left

14

on the Plaintiff's telephone.  Accordingly, the Court will award the Plaintiff $4,000 in statutory damages for the Defendant's violations of the NCCAA.

### D.    Attorney's Fees

The Plaintiff requests attorney's fees pursuant to the FDCPA.  [Doc. 12-1].  Attorney's fees may be awarded where expressly authorized by contract or statute.  United Food and Com. Workers, Local 400 v. Marval Poultry Co., Inc., 876 F.2d 346, 350 (4th Cir. 1989) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975)).  The FDCPA states that "in the case of any successful action" a plaintiff may recover a "reasonable attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(3).  "This determination is within the sound discretion of the court." Barnett v. Creditors Specialty Serv., Inc., No. 1:12-cv-00303, 2013 WL 1629090, at *3 (W.D.N.C. Apr. 16, 2013) (Reidinger, J.) (citing Beasley v. Sessoms & Rogers, P.A., No. 5:09-cv-43-D, 2011 WL 5402883, at *2 (E.D.N.C. Nov. 8, 2011)).  Because the Plaintiff has obtained a default judgment against the Defendant, the Court will award attorney's fees under the FDCPA.

"The starting point for establishing the proper amount of an award is the number of hours reasonably expended, multiplied by a reasonable hourly rate."  Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174 (4th Cir.

1994). The burden is on the fee applicant to justify the reasonableness of the requested fee. Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

In exercising its discretion in the application of this lodestar method, the Court is guided by the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008) (quoting Spell v. McDaniel, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987)). "Although the Court considers all of the factors, they need not be strictly applied in every case inasmuch as all of the factors are not always applicable." Firehouse Restaurant Grp., Inc. v. Scurmont, LLC, No. 4:09-cv-618-RBH, 2011 WL 4943889, at *12 (D.S.C. Oct. 17, 2011) (citing EEOC v. Serv. News Co., 898 F.2d 958, 965 (4th Cir. 1990)).

### 1. Time and Labor Expended

The Plaintiff's attorney incurred 14 hours on this case, including 10.9 hours of attorney time and 3.1 hours of paralegal time. [Doc. 12-4 at 2]. That time was expended consulting with the Plaintiff, preparing the Complaint, effectuating service of process on the Defendant, securing entry of default against the Defendant, and preparing the present Motion for Default Judgment and related documents. [Doc. 12-4 at 3]. The Court has carefully reviewed the billing records submitted by the Plaintiff and finds that the time expended by her attorney was necessary and reasonable.

### 2. Novelty and Difficulty of the Questions Raised

This case required the Plaintiff's attorney to establish the Plaintiff's entitlement to a default judgment on two separate claims with two separate bodies of relevant case law. The questions presented by those claims, however, should not have been particularly difficult for the Plaintiff's attorney, who attests that she regularly handles consumer rights cases. [Doc. 12-3 at ¶¶ 4-6]. Accordingly, this factor bears little weight in the calculation of a reasonable fee.

### 3. Skill Required to Properly Perform the Legal Services

As discussed above, the questions presented by this case should not have been particularly challenging for an attorney experienced in consumer

rights cases.  Accordingly, this factor bears little weight in the calculation of a reasonable fee.

### 4. Opportunity Costs of Litigation

This litigation necessarily prevented the Plaintiff's attorney from devoting time to other matters.  Under the relevant factors, an "attorneys' opportunity costs include the higher rates they would have otherwise charged in other cases and projects."  Irwin Indus. Tool Co. v. Worthington Cylinders Wis., LLC, 747 F. Supp. 2d 568, 596 (W.D.N.C. 2010).  However, the Plaintiff's attorney does not indicate that this matter was less lucrative than other types of cases.  Accordingly, this factor weighs neither in favor of nor against awarding the requested fee.

### 5. Customary Fee for Similar Work

The Plaintiff requests a rate of $290 per hour for her attorney, Taylor Kosla, and $126 per hour for her paralegal, Jackie Laino.  [Doc. 12-4 at 2]. To support that request, the Plaintiff submits information from the United States Consumer Law Survey Report ("Report"), which shows that the median hourly rate for consumer law attorneys practicing in Western North Carolina is $300 per hour, and the mean hourly rate for consumer law attorneys practicing in North Carolina who have been in practice between

three and five years[5] is $263 per hour.  [Doc. 12-2 at 2-3].  The Report further indicates that the average billable paralegal rate in North Carolina is $126 per hour.  [Id. at 2].

The Plaintiff also provides a declaration from her attorney stating that she has been awarded fees ranging between $200 and $275 per hour in other Districts in 2019, 2020, and 2021.  [Doc. 12-3 at ¶¶ 8-11] (citing Cummings v. GMA Invs., LLC, No. 3:19-cv-00345 (M.D. Tenn. Sept. 9, 2019) (awarding $200 per hour); Akinwale v. AA Recovery Sols,, Inc., No. 8:20-cv-01908-SDM-AEP (M.D. Fla. Dec. 29, 2020) (awarding $225 per hour); Goodwyn v. Accredited Mgmt. Sols., LLC, No. 8:20-cv-00244-T-02TGW (M.D. Fl. Aug. 6, 2020) (awarding $225 per hour); Khursheed v. Int'l Recovery Partners & Assocs., LLC, No. 4:19-cv-00101 (E.D. Va. Apr. 1, 2020) (awarding $250 per hour); Lopez-Segarra v. Critical Resol. Mediation, LLC, No. 1:19-cv-01403-JPB (N.D. Ga. July 19, 2021) (awarding $250 per hour); Cacioppo v. Clearview Resol. Servs., Inc., No. 2:20-cv-00336 (D.S.C. June 1, 2020) (awarding $250 per hour); Howard v. HBC Servs., Inc., No. 3:19-cv-05068 (W.D. Mo. June 3, 2020) (awarding $275 per hour)).  The Plaintiff does not present affidavits of any other attorneys who regularly

---

[5] The Plaintiff's counsel has been licensed in the State of Illinois since 2017.  [Doc. 12-3 at ¶ 2].

practice in the area of Asheville, North Carolina in order to establish the prevailing rates in the local market.

As the Fourth Circuit has recognized:

> [D]etermination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate. In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award. Although the determination of a market rate in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the Court has nonetheless emphasized that market rate should guide the fee inquiry.

Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 244 (4th Cir. 2009) (citing Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)). In addition to consideration of specific evidence regarding the prevailing market rate, the Court may rely upon its own knowledge and experience of the relevant market in determining a reasonable rate. See Rum Creek Coal Sales, Inc., 31 F.3d at 179 ("[T]he community in which the court sits is the first place to look to in evaluating the prevailing market rate.").

Based on the foregoing, the Court will find that a reasonable hourly rate for the work of the Plaintiff's counsel on this matter, considering her

expertise and experience, to be $263 per hour, and for paralegal work to be $126 per hour.

## 6. Attorney's Expectation at Outset of Litigation

The Plaintiff's attorney does not provide any details regarding her expectations at the outset of litigation. Accordingly, this is not a factor in calculating a reasonable fee.

## 7. Time Limitations

The Plaintiff's attorney does not claim that this case involved any urgency or any particular time limitations. Accordingly, this also is not a factor in calculating a reasonable fee.

## 8. Amount Involved and Results Obtained

As noted by the Supreme Court, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)). Here, the Court awarded the Plaintiff the full amount of damages that she sought on her claims under the FDCPA and the NCCAA. [Doc. 12 at 4]. As such, this factor weighs in favor of awarding a fee based upon a full hourly lodestar rate.

### 9.  Experience, Reputation, and Ability of Counsel

The Plaintiff's attorney attests that she has significant experience in consumer rights cases because she focuses partially on consumer law and has settled over 450 consumer rights cases.  [Doc. 12-3 at ¶¶ 5-6].  Accordingly, this factor weighs in favor of awarding a fee based upon a full hourly lodestar rate, as counsel was able to represent the Plaintiff in an efficient manner.

### 10.  Undesirability of the Case in the Legal Community

The Plaintiff's attorney does not provide any details regarding the undesirability of cases like this one in the legal community.  Accordingly, this is not a factor in calculating a reasonable rate.

### 11.  Relationship between Attorney and Clients

The Plaintiff's attorney does not provide any details regarding her relationship with her client.  Accordingly, this also is not a factor in calculating a reasonable fee.

### 12.  Fee Awards in Similar Cases

The Plaintiff's attorney attests that she has been awarded the following rates in similar cases: $200 per hour in the Middle District of Tennessee in 2019, $225 per hour in the Middle District of Florida in 2020, $250 in the Eastern District of Virginia in 2020, $250 in the District of South Carolina in

2020, $275 in the Western District of Missouri in 2020, and $250 in the Northern District of Georgia in 2021.  [Doc. 12-3 at ¶¶ 8-11] (citing <u>Cummings v. GMA Invs., LLC</u>, No. 3:19-cv-00345 (M.D. Tenn. Sept. 9, 2019); <u>Akinwale v. AA Recovery Sols., Inc.</u>, No. 8:20-cv-01908-SDM-AEP (M.D. Fla. Dec. 29, 2020); <u>Goodwyn v. Accredited Mgmt. Sols., LLC</u>, No. 8:20-cv-00244-T-02TGW (M.D. Fla. Aug. 6, 2020); <u>Khursheed v. Int'l Recovery Partners & Assocs., LLC</u>, No. 4:19-cv-00101 (E.D. Va. Apr. 1, 2020); <u>Lopez-Segarra v. Critical Resol. Mediation, LLC</u>, No. 1:19-cv-01403-JPB (N.D. Ga. July 19, 2021); <u>Cacioppo v. Clearview Resol. Servs., Inc.</u>, No. 2:20-cv-00336 (D.S.C. June 1, 2020); <u>Howard v. HBC Servs., Inc.</u>, No. 3:19-cv-05068 (W.D. Mo. June 3, 2020)).  Those Districts, however, are distant from the District where this matter is pending, and the Plaintiff has presented no evidence on which to base a comparison between the market in those areas to the Asheville, North Carolina, market for legal services.  As such, this factor weighs little in the determination of a reasonable fee.

## E.    Costs

In addition to attorney's fees, the Plaintiff seeks an award of $602 in costs for the filing fee in this matter and the costs of serving the Defendant. [Doc. 12 at 4; <u>see also</u> Doc. 12-1 at 5; Doc. 12-4 at 2].  The FDCPA allows a successful plaintiff to recover their costs, including filing fees.  15 U.S.C. §

1692k(a)(3).  The Court finds the requested costs to be reasonable and therefore awards the Plaintiff $602 in costs.  <u>See</u> 28 U.S.C. § 1920.

<u>**ORDER**</u>

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Default Judgment [Doc. 12] is **GRANTED.**  The Plaintiff shall have and recover of Defendant M.N.S. & Associates, LLC a judgment of $1,000 in statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A), and a judgment of $4,000 in statutory damages pursuant to N.C. Gen. Stat. § 58-70-130(b), for a total judgment of $5,000.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Costs of the Action and Attorney's Fees [Doc. 12-1] is **GRANTED,** and the Plaintiff shall have and recover from Defendant M.N.S. & Associates $3,257.30 in attorney's fees and $602.00 in costs pursuant to § 1692k(a)(3).

**IT IS SO ORDERED.**

Signed: October 30, 2022

Martin Reidinger
Chief United States District Judge